1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| RYAN SHANKAR, a Conserved Adult by and through his father and Conservator, VISHNU SHANKAR,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY; TRANSPORTATION SECURITY ADMINISTRATION and UNITED AIRLINES CORPORATION, a Delaware Corporation doing business in the State California; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 13-cv-01490 NC<br><br>**ORDER ON MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 28, 35 |

Ryan Shankar, who has autism, filed this lawsuit based on an incident in October 2009 at the airport in Honolulu where he claims he was treated rudely and denied access to a flight. Plaintiff alleges violations of the ADA and the Rehabilitation Act, as well as state law tort claims against defendants United Airlines and two federal agencies responsible for the security screening at the airport. The federal defendants move to dismiss the complaint for lack of standing and failure to state a claim. For the reasons set forth below, the Court dismisses the ADA claim against the federal defendants with prejudice, and dismisses the remaining claims with leave to amend. The United States, which is not named as a defendant but contends it is the only proper federal defendant on the tort claims, filed a motion to dismiss those claims as time-barred, which the Court denies.

# I. BACKGROUND

## A.    The Allegations of the Complaint

At the time he filed his original complaint, plaintiff was eighteen years old.  Dkt. No. 1 ¶ 6.  Plaintiff alleges that he is afflicted with autism, "which impedes his ability to understand, communicate and interpret his daily living experiences, especially those which are unusual and not within the realm of his typical daily routine."  Dkt. No. 19 ¶¶ 6, 11.  On October 4, 2009, he was scheduled to board a return flight on United Airlines from Honolulu to San Francisco with his family following a trip to Hawaii.  *Id.* ¶ 12.  Plaintiff alleges that when he and his family arrived at the airport in Honolulu that day, his father learned that the family's reservations to fly back to San Francisco had been erroneously cancelled.  *Id.* ¶ 16.  While plaintiff's father was speaking with the United Airlines ticket agent about the error, plaintiff uttered some odd noises, and as time went on, became increasingly frustrated and began to flail and engage in self-stimulatory behaviors associated with autism.  *Id.*  When his father informed the ticket agent that plaintiff has autism, the agent allegedly responded by saying "what's that?"  *Id.*  The complaint further alleges that the ticket agent "was rude, dismissive and poorly trained regarding service and decorum for passengers with disabilities," and that when plaintiff was making utterances, "she often rolled her eyes and showed her obvious ignorance about serving persons with disabilities."  *Id.* ¶ 17.

After approximately forty-five minutes, the erroneous ticket cancellations were rectified, the ticket agent provided plaintiff's family with boarding passes, and the family proceeded to the security check points.  *Id.* ¶¶ 18-19.  Plaintiff made his way through the security check prior to any other family member as he was anxious to board the aircraft, although he "was calm and not manifesting any bizarre noises or behaviors."  *Id.* ¶ 19. Plaintiff alleges that at the conclusion of the security screening by the Transportation Security Administration ("TSA"), he gave a "high five sign" to one of the TSA agents, and that while doing so, he slapped the TSA agent's hand and uttered the words "good job."  *Id.* ¶ 20.  According to the complaint, plaintiff, like many others afflicted with autism, has been

taught to administer a "high five sign" and slap the hand of the recipient when successfully completing a task, as well as to utter the words, "good job." *Id.* n.3. Plaintiff alleges that when he slapped the hand of the TSA agent, the agent was smiling and "reciprocated in kind." *Id.* ¶ 20, n.3.

Plaintiff further alleges that as his father was going through the security checkpoint, the same TSA agent yelled out "this kid hit me," referring to plaintiff. *Id.* ¶ 21. Plaintiff's father then tried to explain that plaintiff did not hit the agent, is afflicted with autism, and meant no harm. *Id.* After that, plaintiff's father joined plaintiff "at the end of the security line." *Id.* According to the complaint, plaintiff "was calm and happy" as he walked with his father through the concourse and onto the plane, after stopping at Burger King to purchase french fries. *Id.* ¶ 22.

The complaint further alleges that, after plaintiff and his family boarded the plane and had taken their seats, two members of United Airlines' ground crew "came onto the aircraft while rudely and well above a whisper, insisted that [plaintiff] and his family deplane on an immediate basis," "loudly stat[ing] to [plaintiff]'s father that the pilot specifically wanted he and [plaintiff] 'to get off the aircraft.'" *Id.* ¶ 24. The United Airlines agents "refused to answer any questions about the reasons and/or rationale that required [plaintiff] and his father to deplane." *Id.* Plaintiff alleges that as he and his father were escorted into the airport after deplaning, his father noticed United Airlines agents give a "thumbs up" sign to the TSA agent who reciprocated Plaintiff's "high five" sign earlier at the security checkpoint. *Id.* ¶ 25.

Plaintiff further alleges that "[w]ithout intervention, police contact or explanation of any kind from [United Airlines] personnel or the TSA," plaintiff and his family waited for several hours in the airport before a customer service agent responded to plaintiff's father's "multiple requests for an alternate flight." *Id.* ¶ 26. The customer service agent allegedly said she was not authorized to discuss the incident but was authorized to rebook plaintiff and his family on a non-direct flight to San Francisco. *Id.*

//

**B.     Procedural History**

Plaintiff filed his original complaint on April 3, 2013.  Dkt. No. 1.  At that time, plaintiff brought the original complaint in his own name, without reference to conservatorship.  *Id.*  The complaint named as defendants the United States Department of Homeland Security ("DHS") and the TSA (collectively, "the federal defendants"), United Airlines, and Doe defendants 1-10.  *Id.*

On June 17, 2013, United Airlines filed a motion to dismiss plaintiff's complaint. Dkt. No. 14.  Prior to any federal defendant appearing in the action and by stipulation with United Airlines, plaintiff chose not to oppose the motion to dismiss and instead filed a first amended complaint on July 30, 2013.  Dkt. Nos. 17, 18, 19.

In the first amended complaint, plaintiff brings this action in his own name as "a conserved adult by and through his father and Conservator Vishnu Shankar." Dkt. No. 19. Plaintiff further alleges that he "is temporarily conserved by his father for purposes of this litigation."  *Id.* ¶ 6.  The first amended complaint alleges two causes of action under federal law, for violation of Title II and Title III (42 U.S.C. § 12131 *et seq.*) of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and for violation of  § 504 (29 U.S.C. § 794) of the Health and Rehabilitation Act of 1973 ("the Rehabilitation Act"), as well as three tort claims under state law for negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress.  *Id.*  Each claim is asserted against all defendants, with the exception that United Airlines is not a defendant to the Rehabilitation Act claim.

The Court has subject matter jurisdiction over plaintiff's federal law claims under 28 U.S.C. § 1331, and has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).  All parties and the United States have consented to the jurisdiction of a United States magistrate judge under 28 U.S.C. § 636(c).  Dkt. Nos. 10, 20, 30, 55.

**C.     The Motions to Dismiss**

On August 30, 2013, the federal defendants moved to dismiss the first amended complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of standing, and for

failure to state a claim under Rule 12(b)(6).  Dkt. No. 28.  Among other relief, the federal

defendants request that the Court dismiss the tort claims against them on the basis that the

United States is the only proper defendant for those claims.  *Id.*  The motion also seeks to

strike portions of the complaint as immaterial and impertinent under Rule 12(f).  *Id.*

On September 11, 2013, the United States filed a separate motion, seeking to dismiss

plaintiff's tort claims for lack of jurisdiction under Federal Rule of Civil Procedure

12(b)(1), failure to state a claim under 12(b)(6), and lack of capacity to sue under Rule

17(b) and (c).  Dkt. No. 35.  The United States contends that the tort claims against it must

be dismissed on the ground that plaintiff did not file suit with legal capacity to sue in his

own name or through a representative against the United States within the required six-

month time period after receiving notice of denial of his administrative tort claim.  *Id.*

The Court held a hearing on the two motions to dismiss.  After the hearing, the parties

submitted supplemental briefing, as ordered by the Court, on the issue of whether equitable

tolling applies to plaintiff's tort claims.  Dkt. Nos. 49, 50.

## II. STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim for relief that is plausible on its face.  *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The

plausibility standard is not akin to a probability requirement, but it asks for more than a

sheer possibility that a defendant has acted unlawfully . . . .  Where a complaint pleads facts

that are merely consistent with a defendant's liability, it stops short of the line between

possibility and plausibility of entitlement to relief."  *Iqbal*, 556 U.S. at 678 (quoting

*Twombly*, 550 U.S. at 556–57) (internal quotation marks omitted).  A court is not required

to accept as true conclusory allegations, unreasonable inferences, or unwarranted

deductions of fact.  *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031

(9th Cir. 2008).  Additionally, a pleading that offers "labels and conclusions" or "a

formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at

555.  Where a court dismisses for failure to state a claim under Rule 12(b)(6), it should

1  normally grant leave to amend unless it determines that the pleading could not possibly be

2  cured by the allegation of other facts.  *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*,

3  911 F.2d 242, 247 (9th Cir. 1990).

**III. DISCUSSION**

4

5  **A.    The Federal Defendants' Motion to Dismiss Is Granted.**

6            **1.    Plaintiff's ADA Claim Against the Federal Defendants Is Dismissed With
                      Prejudice.**
7

8            Plaintiff's first claim for relief alleges violations of Title II (public services) and Title

9  III (public accommodations and services operated by private entities) of the ADA against

10  all defendants.  The federal defendants move to dismiss this claim on the basis that the

11  federal government is not subject to the provisions of either Title II or Title III of the ADA.

12  *See Agee v. United States*, 72 Fed. Cl. 284, 289 (Fed. Cl. 2006) (under Title II, 42 U.S.C. §

13  12131(1), the federal government is not included within the definition of a public entity,

14  while Title III of the ADA, 42 U.S.C. § 12181, does not apply to public entities); *accord*

15  *Stringer v. White*, No. 07-cv-5516 SI, 2008 WL 344215, at *6 (N.D. Cal. Feb. 6, 2008).

16  Plaintiff concedes that he cannot maintain an ADA claim against the federal government.

17  Dkt. No. 37 at 19:16-17.  The first claim for relief is therefore dismissed with prejudice as

18  to the federal defendants.

19            **2.    Plaintiff Fails to State a Claim Against the Federal Defendants Under the
                      Rehabilitation Act.**
20

21            Plaintiff's second claim for relief is for violation of § 504 of the Rehabilitation Act,

22  29 U.S.C. § 794.  Section 504 provides that "[n]o otherwise qualified individual with a

23  disability in the United States, as defined in section 705(20) of this title, shall, solely by

24  reason of her or his disability, be excluded from the participation in, be denied the benefits

25  of, or be subjected to discrimination under any program or activity receiving Federal

26  financial assistance or under any program or activity conducted by any Executive agency or

27  by the United States Postal Service."  29 U.S.C. § 794.  An otherwise qualified disabled

28  individual must be provided with reasonable accommodations to ensure meaningful access

to the benefits of public services.  *Mark H. v. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir. 2010) (citations omitted).  In order to plead a claim under either the ADA or the Rehabilitation Act, plaintiff must show (1) he is disabled under the Act; (2) he is "otherwise qualified" for the benefit or services sought; (3) he was excluded solely because of his additional disabilities; and, (4) the program providing the benefit or services receives federal financial assistance or is conducted by any executive agency.  *J.C. v. California Sch. for Deaf*, No. 06-cv-02337 JSW, 2006 WL 2850376, at *5 (N.D. Cal. Oct. 5, 2006); *see also Zukle v. Regents of the University of California*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) ("There is no significant difference in the analysis of rights and obligations created by the ADA and the Rehabilitation Act . . . . Thus, courts have applied the same analysis to claims brought under both statutes.") (internal citations omitted).  A plaintiff claiming disability discrimination under Title II of the ADA or § 504 of the Rehabilitation Act bears the burden of establishing the elements of the prima facie case, including, if needed, the existence of a reasonable accommodation that would enable him to participate in the program, service, or activity at issue.  *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1217 (9th Cir. 2008) (citation omitted); *Wong v. Regents of Univ. of California*, 192 F.3d 807, 816 (9th Cir. 1999).

The complaint here alleges that "[t]he myriad of mental and emotional disorders and disabilities from which [plaintiff] suffers substantially limits a major life activity, i.e. commercial airline travel due to the fact that manifestations of his autism affect his behavior and understanding of certain social skills and protocols associated with commercial airline travel."  Dkt. No. 19 ¶ 45.  Plaintiff claims that he "was entitled to the implementation of accommodations and modifications to assist him when embarking on commercial airline travel."  *Id.*  Plaintiff alleges that the federal defendants "knew or should have known that [plaintiff], due to his disability and lack of understanding could not fully access and/or endure TSA's security procedures in the same manner as would a traveler without disabilities like [plaintiff]'s."  *Id.* ¶ 46.  Plaintiff further alleges "on the basis of information and belief" that DHS "failed to create appropriate screening procedures for patrons afflicted

with autism while concurrently failing to insure that TSA trains and prepares their agents regarding autism and the myriad of manifestations thereof." *Id.* Plaintiff claims that "[d]ue to the denial of Section 504 accommodations and modifications, [he] was unable to access a commercial flight pre-planned to transport he and his family home to San Francisco," *id.* ¶ 48, and that he "has suffered emotional injury, upset, extreme anxiety, humiliation, embarrassment and attorneys fees," *id.* ¶ 46.

The federal defendants move to dismiss this claim both for lack of standing and for failure to state a claim for relief under § 504 of the Rehabilitation Act. Dkt. No. 28 at 10:20-26.

### (a)   *Standing*

The federal defendants contend that plaintiff's Rehabilitation Act claim must be dismissed for lack of standing because the complaint fails to identify an injury in fact caused by the federal defendants. Because standing is a jurisdictional question, courts address standing issues first. *Bank of New York Mellon v. Brewer*, No. 12-cv-03179 RMW, 2012 WL 3904342, at *1 (N.D. Cal. Sept. 7, 2012) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998)). To establish Article III standing, a plaintiff must show: (1) "an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . traceable to the challenged action of the defendant, and not . . . the result of the independent action of some third party not before the court"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Drake v. Obama*, 664 F.3d 774, 779 (9th Cir. 2011) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The existence of federal standing "often turns on the nature and source of the claim asserted." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 947 (9th Cir. 2011) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)).

The federal defendants argue that plaintiff fails to meet the Article III standing requirement of injury in fact and causation because the gravamen of plaintiff's action is

conduct by and between plaintiff and United Airlines, not any identified conduct by the federal defendants. The Court agrees that the complaint does not sufficiently plead an injury fairly traceable to the conduct of the federal defendants. Article III "requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976). While the complaint here asserts that the alleged denial of accommodations and modifications by the federal defendants caused plaintiff to be "unable to access" a flight, Dkt. No. 19 ¶ 48, there are no facts to support a reasonable inference that plaintiff was removed from the flight due to the federal defendants' alleged failure to provide meaningful access to security screening.

In opposition, plaintiff argues that "[g]iven the 'thumbs up' between the TSA agent and [United Airlines'] ground crew, no reasonable minds can differ but that there was a causal link between [United Airlines'] demand that [plaintiff] and his family deplane and the 'high five incident.'" Dkt. No. 37 at 6:17-19. Plaintiff is thus asking the Court to infer entirely based on the "thumbs up" sign between the TSA agent and the United Airlines' ground crew that (1) the TSA agent reported the contact with plaintiff to the United Airlines ground crew; (2) the report constituted discrimination solely based on plaintiff's disability; and (3) the report caused plaintiff to be removed from the airplane. The factual allegations of the complaint, however, do not support these inferences.

First, it is possible that the TSA agent gave a "thumbs up" sign to the United Airlines crew for a number of different reasons. Absent any additional facts, it would be speculative to infer that the "thumbs up" sign meant that the TSA agent "reported th[e] contact as an assault to the pilot and/or ground crew," Dkt. No. 19 ¶ 46, or, as plaintiff argues in his opposition, "the TSA agent informed the [United Airlines] ground crew that [plaintiff] may be a problem on the aircraft." Dkt. No. 37 at 11:5-7. Plaintiff argues that such a "report" by the TSA agent must have occurred because "[H]ow else would the ground crew have known that [plaintiff] may have been a potential problem?" Dkt. No. 37 at 11:13-14.

However, the United Airlines ground crew could have received information about plaintiff through the United Airlines ticket agent who was involved in correcting the ticket cancellations and who is alleged to have been "rude, dismissive and poorly trained regarding service and decorum for passengers with disabilities." Dkt. No. ¶ 17.  Moreover, the inferences drawn by plaintiff are unwarranted in light of the factual allegations of the complaint.  Because the TSA agent was allegedly smiling and "reciprocated in kind" when plaintiff slapped the agent's hand, it seems unlikely that the agent would then report this interaction as "an assault."  While the complaint alleges that the TSA agent yelled "this kid hit me," there is no indication that the TSA agent attempted in any way to impede plaintiff's security screening and boarding of the plane.  To the contrary, the security screening was completed, and plaintiff walked calmly and happily with his father through the concourse and onto the plane.  Dkt. No. 19 ¶¶ 19-22.  Furthermore, plaintiff was later rebooked on a different flight, again with no indication that the federal defendants were involved in the process of removing the plaintiff from the original flight.  *Id.* ¶ 26.

Second, even if the Court could infer that the TSA agent reported the contact with plaintiff to the United Airlines ground crew (and also assuming such a report would constitute disability discrimination), there are no facts alleged to support the inference that United Airlines acted to remove plaintiff and his family from the original flight *because of* the TSA agent's report.  There is no allegation that the federal defendants required, or even requested, that plaintiff and his family be removed from the flight.  Instead, the complaint alleges that the United Airlines crew told plaintiff's father that "*the pilot* specifically wanted" plaintiff and his father to get off the aircraft.  Dkt. No. 19 ¶ 24 (emphasis added).  Again, it is just as possible that United Airlines removed plaintiff from the original flight for reasons unrelated to the TSA agent's purported "report," especially in light of the alleged interactions between plaintiff and his family and the United Airlines ticket agent.

Third, even if the Court were to find in plaintiff's favor on his Rehabilitation Act claim against the federal defendants, such a decision will not be likely to redress plaintiff's injuries which are based on the alleged conduct of another party—United Airlines.  *See*

*Simon*, 426 U.S. at 42-44 (holding that indigents lacked standing to challenge revenue ruling allowing favorable tax treatment to nonprofit hospitals, where it was speculative whether denial of access to hospital services to indigents resulted from the revenue ruling and whether exercise of court's remedial powers would result in the availability to indigents of such services); *Moss v. United States Secret Serv.*, 572 F.3d 962, 970-71 (9th Cir. 2009) (rejecting conclusory allegations of impermissible motive in the absence of any factual allegations tying Secret Service agents to the actions of the local police).  As in *Simon* and *Moss*, speculative inferences are necessary to connect plaintiff's injuries to the challenged actions of the federal defendants.  Plaintiff does not plead sufficient facts to allow the Court to reasonably infer that any of the alleged injuries stemming from the alleged rude conduct during the rebooking and removal from the flight by United Airlines are fairly traceable to the federal defendants.

Finally, while alleged disability discrimination suffered by plaintiff can be an injury in fact for purposes of standing, plaintiff has failed to plead sufficient facts giving rise to a plausible claim of discrimination under § 504 of the Rehabilitation Act.  *See Davis v. Astrue*, 874 F. Supp. 2d 856, 864 (N.D. Cal. 2012) (citations omitted).

Accordingly, the motion to dismiss plaintiff's Rehabilitation Act claim against the federal defendants based on lack of standing is granted with leave to amend.

### *(b)    Failure to State a Claim*

The federal defendants also move to dismiss plaintiff's Rehabilitation Act claim for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) on the grounds that (1) plaintiff predicates his disability claim on denial of a reasonable accommodation but fails to plead facts demonstrating that he (a) does not have meaningful access to a federal program or activity, (b) required and was entitled to a reasonable accommodation, and (c) requested such an accommodation from the federal defendants, and that it was denied; and (2) the minimal conduct alleged against the federal defendants is insufficient to demonstrate discrimination solely by reason of plaintiff's alleged disability.  Dkt. No. 28 at 10:20-26.  In addition to these asserted grounds for dismissal, the federal defendants raise two other

1  "pleading defects" with respect to plaintiff's Rehabilitation Act claim which the Court will

2  address first.

3       Preliminarily, the federal defendants contend that plaintiff's Rehabilitation Act claim

4  is defective because "TSA is not a 'recipient of federal financial assistance' as that term is

5  used in Section 504." Dkt. No. 38 at 11:11-14.  However, by its own terms, § 504 applies

6  to "any program or activity receiving Federal financial assistance or . . . any program or

7  activity conducted by any Executive agency or by the United States Postal Service." 29

8  U.S.C. § 794; *see also Davis v. Astrue*, No. 06-cv-6108 EMC, 2011 WL 3651064, at *2-3

9  (N.D. Cal. Aug. 18, 2011) (explaining that § 504 authorizes a private right of action for

10  injunctive or equitable relief against both recipients of federal funds as well as the federal

11  government itself) (citing *Doe v. Attorney General*, 941 F.2d 780, 785 (9th Cir. 1991),

12  *overruled on other grounds by Lane v. Pena*, 518 U.S. 187, 191 (1996)).

13       The TSA was created as an administration of the Department of Transportation,

14  which is an executive department of the United States and shares certain responsibilities

15  with the DHS concerning transportation security strategic planning.  49 U.S.C. §§ 114, 102.

16  Subsequently, the TSA became part of the DHS.  6 U.S.C. 203(2); *see Castro v. Sec'y of

17  Homeland Sec.*, 472 F.3d 1334, 1335 (11th Cir. 2006).  The DHS has issued regulations to

18  enforce § 504.  *See* 6 C.F.R. § 15.30 (prohibiting discrimination by DHS); 6 C.F.R. § 15.1

19  ("The purpose of this part is to effectuate section 504 of the Rehabilitation Act of 1973 . . . ,

20  which prohibits discrimination on the basis of disability in programs or activities conducted

21  by Executive agencies."); *cf. Castro*, 472 F.3d at 1335 (holding that a disabled applicant for

22  a transportation security screening position cannot sue DHS for violation of the

23  Rehabilitation Act because the Aviation and Transportation Security Act, 49 U.S.C. §

24  44935 exempts TSA from certain requirements of the Rehabilitation Act with regard to

25  employment of security screeners).  Accordingly, the federal defendants fall within the

26  definition of "Executive agency" within the meaning of § 504.

27       Another "pleading defect" raised by the federal defendants is that air travel is not a

28  major life activity.  Dkt. No. 38 at 11:11-14.  To state a claim under § 504 of the

Rehabilitation Act, plaintiff must be a qualified individual with a disability as defined in § 705(20).  29 U.S.C. §§ 705(20), 794.  For purposes of the ADA and the Rehabilitation Act, "an individual is disabled if that individual (1) has a physical or mental impairment that substantially limits one or more of the individual's major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 884 (9th Cir. 2004) (citations omitted); 6 C.F.R. § 15.3(d).  A mental impairment covered under the Rehabilitation Act includes any mental or psychological disorder such as emotional or mental illness.  *Coons*, 383 F.3d at 884-85; 6 C.F.R. § 15.3(d)(1)(i) (mental impairment includes "[a]ny mental or psychological disorder such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.").  Major life activities includes functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.  *Coons*, 383 F.3d at 885; 6 C.F.R. § 15.3(d)(2).

Plaintiff here alleges that he "is afflicted with autism which impedes his ability to understand, communicate and interpret his daily living experiences, especially those which are unusual and not within the realm of his typical daily routine."  Dkt. No. 19 ¶ 6.  Plaintiff further alleges that he "is substantially impaired in major life activities" and that his "impairments render him unable to understand communication, appropriate social interactions and to suffer from low frustration tolerance relating to unexpected transitions and delays."  *Id.* ¶ 11.  These allegations distinguish this case from *Coons*, cited by the federal defendants for the proposition that air travel is not a major life activity, because the plaintiff in *Coons* "identified travel as the only major life activity that was limited by his impairments."  *Coons*, 383 F.3d at 885.  The Court concludes that plaintiff here has sufficiently alleged that his autism is a mental impairment that substantially limits major life activities such as his ability to understand or communicate, and therefore is a disabled individual for purposes of his § 504 claim.  *See Mark H. v. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir. 2010) (students with autism were individuals with disability for purposes of the Rehabilitation Act).  The federal defendants have not provided any authority to the contrary.

The Court, however, agrees with the federal defendants that plaintiff has not stated a plausible § 504 claim because he has failed to identify a federal program or activity to which he does not have meaningful access.  Plaintiff claims that he "was entitled to the implementation of accommodations and modifications to assist him when embarking on commercial airline travel."  Dkt. Nos. 19 ¶ 45; 37 at 14:23-24.  However, "commercial airline travel" is not a "program" or "activity" conducted by the federal defendants.  The TSA is charged with providing security screening operations for the civil air transportation system.  49 U.S.C. § 114; *see Field v. Napolitano*, 663 F.3d 505, 508 (1st Cir. 2011) (to improve aviation security after the terrorist attacks of September 11, 2001, "Congress created a new agency, the TSA, with sweeping responsibility for airport security screening, including setting the qualifications, conditions, and standards of employment for airport security screeners").  The complaint here does not challenge any aspect of the federal defendants' security procedures at the Honolulu airport that plaintiff encountered.  According to the complaint, at the conclusion of the TSA security screening, plaintiff gave a "high five sign" to one of the TSA agents who was smiling and "reciprocated in kind."  Dkt. No. 19 ¶ 20, n.3.  The allegation that, as plaintiff's father was going through the security checkpoint, the same TSA agent yelled out "this kid hit me," *id.* ¶ 21, does not allege sufficient facts showing that plaintiff was denied meaningful access to the security screening procedures.  Nor has plaintiff alleged facts showing the existence of any reasonable accommodation that would provide him meaningful access, or that he requested such an accommodation and it was denied.

Additionally, there are no factual assertions that the federal defendants knew or should have known anything about plaintiff's disability.  Plaintiff's allegations that the federal defendants "knew or should have known that [plaintiff], due to his disability and lack of understanding could not fully access and/or endure TSA's security procedures in the same manner as would a traveler without disabilities like [plaintiff]'s" are conclusory and implausible in light of the factual allegations of the complaint.  Dkt. Nos. 19 ¶ 46; 37 at 14:27-15:2.  According to the complaint, plaintiff made his way through the security check

1   "calm and not manifesting any bizarre noises or behaviors." Dkt. No. 19 ¶ 19.  It was only

2   *after* the TSA agent allegedly yelled "this kid hit me," that plaintiff's father informed the

3   TSA agent that plaintiff is autistic.  *Id.* ¶¶ 19-21.  The complaint therefore does not show

4   that plaintiff was discriminated "solely by reason of . . . his disability." 29 U.S.C. § 794.

5       Accordingly, the complaint does not allege sufficient facts to demonstrate conduct

6   plausibly giving rise to a claim under the Rehabilitation Act against the federal defendants.

7   Plaintiff's Rehabilitation Act claim against the federal defendants is dismissed with leave to

8   amend.

9   **3.    Plaintiff's Tort Claims Against the Federal Defendants Are Dismissed
            with Leave to Amend.**

10

11      *(a)    The Tort Claims Are Dismissed with Leave to Substitute the United
                States as a Defendant.*

12      The federal defendants also move to dismiss plaintiff's tort claims against them on the

13  basis that the Court does not have jurisdiction over such claims and that only the United

14  States is the proper defendant.  Dkt. No. 28 at 31-32.  Plaintiff fails to address this argument

15  in his opposition.

16      "Absent a waiver, sovereign immunity shields the Federal Government and its

17  agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994).  The Federal Tort Claims

18  Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80, waives the sovereign immunity of the

19  United States for certain torts committed by federal employees.  *F.D.I.C.*, 510 U.S. at 475-

20  76.  However, because the United States is the only proper party defendant in an FTCA

21  action, the Court must dismiss the federal agencies named as defendants.  *Kennedy v. U.S.

22  Postal Serv.*, 145 F.3d 1077, 1078 (9th Cir. 1998); *McAllister v. United States*, No. 11-cv-

23  03858 MEJ, 2013 WL 2551990, at *2-3 (N.D. Cal. June 10, 2013).  Because plaintiff

24  cannot maintain his tort causes of action against the federal defendants, those claims must

25  be dismissed.  The Court will permit leave to amend to substitute the United States in the

26  place of the federal defendants.

27  *//*

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### *(b)    The Tort Claims Are Dismissed for Lack of Standing.*

The federal defendants contend that all of plaintiff's claims must be dismissed for lack of standing because plaintiff has failed to allege facts showing that any of the alleged injuries of ticketing cancellation, rebooking, rude conduct and removal from the flight, all by United Airlines, are fairly traceable to the federal defendants.  Dkt. Nos. 28 at 10:20-21; 38 at 9:3-10.  The Court agrees that the failure to satisfy these elements of standing also requires the dismissal of the tort claims against the federal defendants.

Under the FTCA, tort actions against the United States are governed by the "law of the place where the act or omission occurred."  28 U.S.C. §1346(b)(1); *Kangley v. United States*, 788 F.2d 533, 534 (9th Cir. 1986).  In this case, the Court applies the law of the state of Hawaii where the relevant events occurred.

Under Hawaii law, there are four primary elements to a negligence claim: (1) "[a] duty or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks"; (2) "[a] failure on the defendant's part to conform to the standard required: a breach of the duty"; (3) "[a] reasonably close causal connection between the conduct and the resulting injury"; and (4) "[a]ctual loss or damage resulting to the interests of another."  *Doe Parents No. 1 v. State, Dep't of Educ.*, 100 Haw. 34, 68 (2002) (citation omitted); *Sung v. Hamilton*, 710 F. Supp. 2d 1036, 1054 (D. Haw. 2010).  Furthermore, Hawaii law treats a claim for negligent infliction of emotional distress claim as a negligence claim in which "the alleged actual injury is wholly psychic."  *Doe Parents No. 1*, 100 Haw. at 69.

To state a claim for intentional infliction of emotional distress under Hawaii law a plaintiff must allege: "(1) that the act allegedly causing the harm was intentional or reckless, (2) that the act was outrageous, and (3) that the act caused (4) extreme emotional distress to another."  *Enoka v. AIG Hawaii Ins. Co., Inc.*, 109 Haw. 537, 559 (2006) (citation omitted).

As the Court explained in connection with the Rehabilitation Act claim, plaintiff does not plead sufficient facts to allow the Court to reasonably infer that any of the alleged injuries suffered by him due to the alleged rude conduct during the rebooking and removal

from the flight by United Airlines are fairly traceable to the federal defendants. Accordingly, plaintiff's tort claims against the federal defendants are dismissed for lack of standing with leave to amend.

### (c)   The Negligence Claims Are Dismissed for Failure to Allege a Duty That Was Breached and Causation.

The federal defendants move to dismiss the negligence claims for the additional reason that they are improperly predicated on alleged disability discrimination, as opposed to conduct recognizable under state tort law. Dkt. No. 28 at 10:26-11:3. The federal defendants contend that, to the extent plaintiff predicates his negligence torts on training, he has failed to plead sufficient facts demonstrating negligent training that resulted in harm to him. *Id.*

A claim for negligence requires plaintiff to allege "[a] duty or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks." *Doe Parents No. 1*, 100 Haw. at 68. "Regardless of the source of a particular duty, a defendant's liability for failing to adhere to the requisite standard of care is limited by the preposition that the defendant's obligation to refrain from particular conduct [or, as the circumstances may warrant, to take whatever affirmative steps are reasonable to protect another] is owed only to those who are foreseeably endangered by the conduct and only with respect to those risks or hazards whose likelihood made the conduct [or omission] unreasonably dangerous." *Id.* at 72 (internal quotation marks and citation omitted).

The complaint here alleges that "[a]s a common carrier and facilitator of commercial airline passage, Defendants have an affirmative duty to train their employees about disability awareness, including the procedures and protocols necessary to avoid disability discrimination." Dkt. No. 19 ¶¶ 51, 59. The complaint sets forth a list of acts and omissions that allegedly "fell short of the duties owed." *Id.* ¶ 52. While plaintiff does not identify which defendants are responsible for which of the different acts and omissions, the only listed conduct that appears to apply to the federal defendants is in "evidencing

disability discrimination . . . by the TSA agent who reciprocated the high five then yelled out 'this kid hit me,'" *id.* ¶ 52(e), "not properly training or supervising their employees about appropriate disability protocol and disability awareness," *id.* ¶ 52(f), and "intentionally delaying the implementation of disability accommodations and corrective measures such as a disability audit," *id.* ¶ 52(i).  With respect to all "defendants," the complaint alleges that defendants breached the duty to train by (1) "failing to provide reasonable accommodations to [plaintiff]"; and (2) "by participating in a contrived and deliberate effort to discriminate against [plaintiff] based on his documented disabilities." *Id.* ¶ 59.  Plaintiff claims that as a direct and proximate result of the acts and omissions of defendants, he has "suffered severe physical, emotional and economic injury including, but not limited to, exacerbation of existing medical and psychiatric conditions, severe emotional distress, extreme anxiety, humiliation, embarrassment and attorneys fees."  *Id.* ¶¶ 53, 60.

The Court agrees that plaintiff has not alleged a duty to train by the federal defendants recognized by Hawaii law.  Moreover, even if a duty to train is cognizable, the complaint fails to allege facts plausibly demonstrating that the federal defendants breached this duty.[1] Finally, plaintiff alleges no facts that any alleged breach of a duty to train by federal defendants proximately caused plaintiff any of the alleged harm.  In his opposition, plaintiff argues that the TSA agent's utterance "this kid hit me" set into motion "a chain of events" that ultimately caused his forced removal from the airplane.  Dkt. No. 37 at 16:7-25. Plaintiff further argues that the removal from the airplane "was based on false and misleading circumstances that should have been easily overcome had the TSA agent been more receptive and aware of autism and its manifestations."  *Id.* at 16:15-18.  However, as discussed above, plaintiff's causation theory is not based on facts but rather on speculation and unwarranted inferences.  Accordingly, because plaintiff fails to allege a cognizable duty

---

[1] The federal defendants argue that, even if he could plead such facts, plaintiff's theory would be barred by the discretionary function exception to the FTCA. Dkt. No. 28 at 11:3-4. Because it is unclear whether plaintiff would be able to amend the complaint to allege a cognizable duty under Hawaii law and a breach of that duty, the Court does not reach the issue of whether the discretionary function exception bars plaintiff's tort claims against the federal defendants.

1   under state law, breach, and proximate harm caused by the breach, his tort claims against

2   the federal defendants are dismissed with leave to amend.

3           *(d)*     ***The Claim for Intentional Infliction of Emotional Distress Is***

4                     ***Dismissed for Failure to Allege Outrageous Conduct.***

5           Additionally, the Court agrees with the federal defendants that the complaint does not

6   state a claim for intentional infliction of emotional distress against them because plaintiff

7   has failed to sufficiently allege that they engaged in outrageous conduct.  Dkt. No. 28 at

8   11:4-5.  The term "outrageous" has been construed to mean "without just cause or excuse

9   and beyond all bounds of decency."  *Enoka*, 109 Haw. at 559 (citation omitted); *Kittleson v.*

10  *Sears, Roebuck & Co.*, No. 10-cv-00106, 2010 WL 2485935, at *5 (D. Haw. June 15,

11  2010).

12          The complaint here contains mere conclusory assertions.  Dkt. No. 19 ¶ 55.  Plaintiff

13  claims that defendants "volitionally chose to mimic, antagonize and impede [plaintiff]'s

14  access to public transportation," and that "[a]s each of the Defendants encountered

15  [plaintiff], they mocked him, imitated and made fun of him as he made his way through the

16  terminal and onto the aircraft. "  *Id.* ¶ 56.  However, these allegations are not supported by

17  any of the facts alleged in the complaint as to the federal defendants.  The alleged facts

18  related to the conduct of the federal defendants are that, when plaintiff slapped the hand of

19  the TSA agent, the agent was smiling and "reciprocated in kind," *id.* ¶ 20, n.3, the TSA

20  agent yelled "this kid hit me," *id.* ¶ 21, plaintiff and his family completed the security

21  screening, plaintiff "was calm and happy" as he walked with his father through the

22  concourse and onto the plane, *id.* ¶ 22, and later when plaintiff and his father were escorted

23  into the airport after deplaning, his father noticed United Airlines agents give a "thumbs up"

24  sign to the TSA agent who reciprocated Plaintiff's "high five" sign, *id.* ¶ 25.  It is not

25  reasonable to infer from these facts that the federal defendants "mocked," "imitated,"

26  "made fun of" plaintiff, or otherwise "impeded" plaintiff's access to public transportation.

27          Furthermore, according to the complaint, plaintiff made his way through the security

28  check "calm and not manifesting any bizarre noises or behaviors" and it was only after he

completed his security screening that the TSA agent allegedly yelled "this kid hit me" and plaintiff's father informed the TSA agent that plaintiff is autistic. *Id.* ¶¶ 19-21. Thus, plaintiff's allegation that "Defendants, while knowing [his] particular vulnerabilities and with actual knowledge of his mental and emotional disorders, acted with malice, intolerable cruelty and wilful disregard," *id.* ¶ 55, offers mere "labels and conclusions" that are not sufficient to state a claim. There are no facts plausibly asserting that the federal defendants knew or should have known anything about plaintiff's "particular vulnerabilities" during the security screening. Because plaintiff has failed to allege outrageous conduct, his claim for intentional infliction of emotional distress against the federal defendants is dismissed with leave to amend.

### 4.  The Request to Dismiss the Doe Defendants Is Denied.

The federal defendants contend that defendants Does 1-10 should be dismissed on the grounds that "Doe pleading" (1) is generally improper in federal court; and (2) the only proper defendant under the FTCA is the United States. Dkt. No. 28 at 30. The federal defendants reason that "[t]o the extent Plaintiff contends that some unknown person is responsible for the acts alleged, whatever they may be, then his beef cannot be with the federal defendants." Dkt. No. 38 at 18:18-20. The Court agrees that, to the extent Does 1-10 are federal agencies, plaintiff's tort claims against them must be dismissed for the same reason the Court dismissed the FTCA claims against the federal defendants. However, the complaint does not limit Does 1-10 to federal agencies. In light of the fact that this case is at its early stage and plaintiff has not had the benefit of discovery, the Court denies the request to dismiss the Doe defendants at this time without prejudice.

### 5.  The References In the Complaint to "Others" Are Stricken.

The federal defendants further argue that, while plaintiff brings this lawsuit on his own behalf about alleged conduct against him, his complaint references unspecified "others." Dkt. No. 28 at 32: 10-33:10; *see e.g.*, Dkt. No. 19 ¶ 27 (alleging that United Airlines' alleged denial of access to Flight 74 "coupled with the false allegations from the TSA agent impeded [plaintiff] and others with disabilities from full and equal enjoyment of

the rights of citizenship in a free society.").  The federal defendants move to strike all such references to "others" in the complaint as immaterial and impertinent to plaintiff's claims under Federal Rule of Civil Procedure 12(f).  In his opposition, plaintiff indicates that he is willing to amend his complaint to remove such references to "others."  Dkt. No. 37 at 19:19-22.  Accordingly, the Court orders the references to "others" stricken.

**B.     The United States' Motion to Dismiss Is Denied.**

The United States moves to dismiss the tort claims against it[2] on the ground that plaintiff did not file suit with legal capacity to sue in his own name or through a representative within the required six-month time period after receiving notice of denial of his administrative tort claim.  Dkt. No. 35.  Under the FTCA, a tort claim against the United States "shall be forever barred . . . unless action is begun within six months after the date of mailing . . . of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b).

Here, the complaint alleges that plaintiff filed a claim notification under the FTCA with the TSA on February 1, 2010, and that he was issued a right to sue letter on October 12, 2012.  Dkt. No. 19 ¶ 4.  On April 3, 2013, plaintiff filed the original complaint in his own name and without reference to conservatorship.  Dkt. No. 1.  On July 30, 2013, plaintiff filed his first amended complaint, purporting to bring this action in his own name as "a conserved adult by and through his father and Conservator Vishnu Shankar."  Dkt. No. 19.  Plaintiff further alleges that he "is temporarily conserved by his father for purposes of this litigation."  *Id.* ¶ 6.  Plaintiff acknowledges that at the time of filing his initial

_____

[2] The United States is not named as a defendant in the first amended complaint.  Plaintiff urges the Court to deny the United States' motion on the basis that the federal defendants have already filed a motion to dismiss without raising the capacity issue and that defendants should not be allowed "two bites of the same apple."  Dkt. No. 39 at 6.  The United States responds that it is the only proper defendant in an FTCA action, and that it has thus moved to dismiss the tort claims so that the Court should hear the motions to dismiss together to save the time and resources of the parties.  Dkt. No. 41 at 4.  Given the Court's dismissal of the tort claims against the federal defendants with leave to substitute the United States as a defendant, the Court agrees that it is in the interest of justice to rule on the merits of the United States' motion now.

complaint he was not conserved and contends that a temporary conservatorship giving his father power to engage in litigation on plaintiff's behalf was put in place on June 27, 2013, before the filing of the amended complaint.  Dkt. Nos. 39 at 5 n.1, 9; 49 at 2.  On September 18, 2013, the San Mateo County Superior Court issued letters of conservatorship and an order appointing probate conservator.  Dkt. Nos. 40; 49 at 8.[3]

It is undisputed that plaintiff filed his initial complaint within six months after receiving notice of denial.  The United States nonetheless argues that plaintiff's tort claims should be dismissed on the ground that he did not comply with the six-month filing deadline as he did not have capacity to sue at the time the original complaint was filed, and because his first amended complaint was not filed until after the expiration of the six-month filing deadline.  Dkt. Nos. 35 at 13-14; 41 at 6.  Plaintiff does not appear to contest the assertion that he did not have capacity to bring suit at the time of filing of the initial complaint.[4]

The United States asserts that a plaintiff "cannot come into federal court without the capacity to sue," citing Federal Rule of Civil Procedure 17.  Dkt. Nos. 35 at 7; 41 at 5, 7.  However, the Court does not agree with the United States' contention that plaintiff's lack of capacity is a fatal defect requiring the dismissal of his tort claims as time-barred.  Lack of capacity is generally not considered a jurisdictional defect.  *See e.g.*, *Summers v. Interstate Tractor & Equip. Co.*, 466 F.2d 42, 50 (9th Cir. 1972); *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 936 (2d Cir. 1998); *Bank of New York Mellon v. Brewer*, No. 12-03179 RMW, 2012 WL 3904342, at *1 (N.D. Cal. Sept. 7, 2012).  Moreover, where a plaintiff originally lacks capacity to sue, the Court has the authority to permit an

---

[3] In connection with its motion to dismiss, the United States requests that the Court take judicial notice of the following materials: (1) Plaintiff's counsel's September 5, 2013 cover email to the court with attachment of the superior court's order regarding temporary conservatorship of Plaintiff; and (2) the current docket in the probate matter of Ryan Shankar in the San Mateo Superior Court, Case No. 123479, obtained from the San Mateo Superior Court's publicly available website. Dkt. Nos. 35-1, 35-2.  The United States' unopposed request for judicial notice is granted under Federal Rule of Evidence 201(b)(2).

[4] For the purposes of ruling on the United States' motion to dismiss the tort claims, the Court will assume that plaintiff is without capacity to sue, without making a determination on the issue of capacity which is addressed later in this order.

amendment of the complaint to allege the claims in plaintiff's proper capacity and may relate such amendment back to the date of the original pleading where the amendment does not change the claims asserted. *De Franco v. United States*, 18 F.R.D. 156, 161 (S.D. Cal. 1955) (citing cases); *see* Fed. R. Civ. Proc. 15(c) (governing relation back of amendments). "[I]n such cases the defect is purely formal or procedural, and . . . essential justice requires that liberal amendment be permitted." *De Franco*, 18 F.R.D. at 161. Notably, the United States has failed to cite to any case law, and the Court is not aware of any, that holds that a plaintiff's initial lack of capacity renders the filing of an action a nullity for purposes of the six-month filing requirement under the FTCA, 28 U.S.C. § 2401(b).

Furthermore, the United States' motion to dismiss asserts that, because the six-month filing deadline is jurisdictional and not subject to tolling principles, plaintiff's failure to comply with the deadline deprives the federal courts of jurisdiction over plaintiff's tort claims. Dkt. No. 35 at 13-14, citing *Marley v. United States*, 567 F.3d 1030, 1038 (9th Cir. 2009). However, on October 9, 2013, after the United States' motion to dismiss was fully briefed, the Ninth Circuit issued the opinion in *Wong v. Beebe*, 732 F.3d 1030 (9th Cir. 2013) expressly overruling the *Marley* case. In *Wong*, an en banc panel of the Ninth Circuit held that the statute of limitations in 28 U.S.C. § 2401(b) of the FTCA is not jurisdictional and is subject to a presumption of equitable tolling. *Id.* at 1033, 1047. The Ninth Circuit found that equitable tolling was "easily" justified under the circumstances presented in that case which showed that plaintiff's failure to file a negligence claim within the six-month filing deadline was not the consequence of any fault or lack of due diligence on her part, but was due solely to the district court's delay in ruling on her motion to amend the complaint to allege the negligence claim. *Id.* at 1052-53.

In reaching this conclusion, the Ninth Circuit applied "[l]ong-settled equitable-tolling principles" instructing that "[g]enerally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." *Id.* at 1052 (internal quotation marks and citations omitted). "As to the first element, '[t]he standard for reasonable diligence

does not require an overzealous or extreme pursuit of any and every avenue of relief. It requires the effort that a reasonable person might be expected to deliver under his or her particular circumstances.'" *Id.* (citation omitted). "Central to the analysis is whether the plaintiff was 'without any fault' in pursuing his claim. *Id.* (citation omitted). "With regard to the second showing, 'a garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling.'" *Id.* (citation omitted). "Instead, a litigant must show that 'extraordinary circumstances were the cause of his untimeliness and . . . ma[de] it impossible to file [the document] on time.'" *Id.* (citation omitted).

Applying these principles, the Court finds that the circumstances here justify equitable tolling. Plaintiff timely initiated this action within the six-month filing deadline, which served to inform the United States of his tort claims and thus "fulfilled the notice concern that partially underlies limitations statutes." *See Wong*, 732 F.3d at 1053. Moreover, plaintiff obtained a temporary conservatorship on June 27, 2013, less than three months after the six-month filing deadline, and also sought to obtain a permanent conservatorship which issued on September 18, 2013. *See* Dkt. Nos. 39-40, 49. The United States' motion to dismiss the tort claims is thus based on plaintiff's delay in securing a conservatorship and the argument that the conservatorship currently in place is not sufficient for the purposes of this litigation. Dkt. Nos. 41 at 6; 50 at 5-7. The Court addresses the adequacy of the conservatorship in a separate part of this order. For the purposes of the motion to dismiss the tort claims, however, the Court is not persuaded that plaintiff's claims should be barred based on such technical defects.

In light of the fact that the action was commenced within the deadline, providing the United States with notice of the claims, the absence of prejudice to the United States, the lack of dispute that plaintiff has a mental disability, and the lack of any evidence that the delay was in bad faith, the Court finds that plaintiff has been diligent in pursuing his rights under the circumstances. Accordingly, the Court finds that equitable tolling is warranted to relieve plaintiff from the injustice that would result if his claims were barred due to his

failure to secure a legally sufficient conservatorship within the six-month filing deadline.

## C.   Plaintiff's Capacity to Sue

The Court's conclusion that plaintiff's possible lack of capacity to sue does not necessarily render his claims untimely under 28 U.S.C. § 2401(b) of the FTCA does not end the inquiry into the capacity issue.  The Court must still determine whether plaintiff is incompetent for the purposes of this action due to his mental disability, and if he is, whether he has a "duly appointed representative" for the purpose of pursuing this action, or whether it is appropriate to appoint a guardian ad litem to protect plaintiff's interests as contemplated by Federal Rule of Civil Procedure 17.

Federal Rule of Civil procedure 17(b)(1) provides that, for an individual who is not acting in a representative capacity, the capacity to sue is determined by the law of the individual's domicile, here, California.  Fed. R. Civ. P. 17(b)(1); *see* Dkt. No. 19 ¶ 5.  Rule 17(c) further provides that a minor or incompetent person may sue with a representative such as a general guardian, a committee, a conservator, or a like fiduciary.  Fed. R. Civ. P. 17(c)(1).  A minor or incompetent person without a duly appointed representative may sue by a next friend or by a guardian ad litem.  Fed. R. Civ. P. 17(c)(2).  "The court must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action."  *Id.*  Rule 17(c) "requires a court to take whatever measures it deems proper to protect an incompetent person during litigation. Although the court has broad discretion and need not appoint a guardian ad litem if it determines the person is or can be otherwise adequately protected, it is under a legal obligation to consider whether the person is adequately protected."  *United States v. 30.64 Acres of Land*, 795 F.2d 796, 805 (9th Cir. 1986) (citation omitted).

Similarly, under California law, "[w]hen a minor, an incompetent person, or a person for whom a conservator has been appointed is a party," that person must appear either by a guardian or conservator of the estate or by a guardian ad litem.  Cal. Civ. Proc. Code § 372. "In California, a party is incompetent if he or she lacks the capacity to understand the nature or consequences of the proceeding, or is unable to assist counsel in the preparation of the

case." *Golden Gate Way, LLC v. Stewart*, No. 09-cv-04458 DMR, 2012 WL 4482053, at *2 (N.D. Cal. Sept. 28, 2012) (citing *In re Jessica G.*, 93 Cal. App. 4th 1180, 1186 (2001); Cal. Civ. Proc. Code § 372; *In re Sara D.*, 87 Cal. App. 4th 661, 666-67 (2001)); *Elder-Evins v. Casey*, No. 09-cv-05775 SBA (LB), 2012 WL 2577589, at *2 (N.D. Cal. July 3, 2012). "A guardian ad litem may be appointed for an incompetent adult only (1) if he or she consents to the appointment or (2) upon notice and hearing." *Golden Gate Way*, 2012 WL 4482053, at *3 (citing *Jessica G.*, 93 Cal. App. 4th at 1187-88). "The obligation of the court to appoint a guardian ad litem pursuant to Rule 17(c) does not arise until after a determination of incompetence has been made by the court in which the issue is raised." *Forte v. Cnty. of Merced*, No. 11-cv-0318, 2013 WL 3282957, at *3 (E.D. Cal. June 27, 2013) (citing *Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 201 (2d Cir. 2003)).

The issue of plaintiff's capacity here was discussed at the case management conference held by the Court on September 4, 2013, and again during the hearing on the pending motions to dismiss and further case management conference on October 30, 2013. Dkt. Nos. 32, 48. Plaintiff's counsel informed the Court and defendants that on June 27, 2013, plaintiff's father, Vishnu Shankar, obtained a temporary conservatorship over plaintiff, and that on September 18, 2013, the San Mateo Superior Court issued letters of conservatorship and an order appointing Vishnu Shankar as plaintiff's probate conservator. *See* Dkt. No. 40. The June 27 document titled "Order Appointing Temporary Conservator" states that Vishnu Shankar is appointed temporary conservator of the person and the estate of Ryan Shankar, and that "[i]n addition to the powers granted by law, the temporary conservator" is granted "[*a]ll authority to make decisions* related to the C 13 1490, Federal Civil case in which conservatee is the Plaintiff." *Id.* at 16-17 (emphasis added). The first page of the document states "WARNING: THIS APPOINTMENT IS NOT EFFECTIVE UNTIL LETTERS HAVE ISSUED." *Id.* at 16. According to plaintiff's brief on equitable tolling, letters of conservatorship were not issued when the temporary conservatorship was granted. Dkt. No. 49 at 2:8-20.

//

Case No. 13-cv-01490 NC
ORDER ON MOTIONS TO DISMISS          26

The September 18 letters of conservatorship and order of appointment state that Vishnu Shankar is appointed "limited conservator" of the person and the estate of Ryan Shankar.  Dkt. No. 40 at 4-14.  The letters and order grant Vishnu Shankar the following powers under California Probate Code § 2351.5: (1) "[t]o fix the residence or specific dwelling of the limited conservatee"; (2) "[t]o access the confidential records and papers of the limited conservatee"; (3) "[t]To have the right to contract on behalf of the limited conservatee"; (4) "[t]o have the power to give or withhold medical consent; and (5) "[t]o have the power to make decisions concerning the education of the limited conservatee." *Id.* at 4, 6, 14.  In addition, the letters and order provide that "[p]ursuant to the provisions of California Probate Code Section 2591(p), the Conservator shall have full powers *to collect and compromise* the claim of the Conservatee which pertains to [this action]." *Id.* at 4, 7, 11 (emphasis added).  The order appointing conservator further states that "[p]ursuant to the provisions of California Probate Code Section 2504, the Conservator . . . shall petition this Court for approval of any settlement or compromise of the above-specified litigation." *Id.* at 11.  Unlike the order appointing temporary conservator, the subsequent order appointing limited conservator does not purport to give Vishnu Shankar the power to make all decisions on behalf of plaintiff related to this case, but only "to compromise and collect" plaintiff's claim.

The United States asserts that the appointment of a conservator of the estate is an adjudication that the conservatee lacks the legal capacity to enter into or make any transaction that binds or obligates the conservatorship estate.  Dkt. No. 41 at 8:13-15 (citing Cal. Prob. Code § 1872).  The conservatorship currently in place over plaintiff, however, is a *limited* one.  *See* Dkt. No. 40 at 8-14.  Section 1872(b) states that, "[e]xcept as otherwise provided in the order of the court appointing a limited conservator, the appointment does not limit the legal capacity of the limited conservatee to enter into transactions or types of transactions."  Probate Code § 1801(d) further provides that, while a "limited conservator of the person or of the estate, or both, may be appointed for a developmentally disabled adult," "[t]he conservatee of the limited conservator *shall not be presumed to be incompetent* and

shall retain all legal and civil rights except those which by court order have been designated as legal disabilities and have been specifically granted to the limited conservator." Cal. Prob. Code § 1801(d) (emphasis added). Thus, to the extent the United States contends that plaintiff has been determined to be incompetent under California law, the Court does not agree.

However, in light of the allegations of the complaint regarding plaintiff's mental disability and the representations of plaintiff's counsel on the issue of plaintiff's capacity to sue, the Court concludes that a question exists whether plaintiff is competent and could adequately protect himself. Furthermore, it appears that the limited conservatorship currently in place does not empower plaintiff's father to make all decisions related to this action. Accordingly, by March 5, 2014, plaintiff's counsel (1) must explain to plaintiff the purpose and effect of a guardian ad litem appointment, *see Jessica G.*, 93 Cal. App. 4th at 1188; (2) must file a statement informing the Court and the other parties about whether or not plaintiff consents to the appointment of a guardian ad litem; and (3) if plaintiff consents to the appointment, plaintiff's counsel must file a request to appoint a guardian ad litem, identifying the person who is proposed to serve as a guardian ad litem and explaining why that person would be a suitable guardian ad litem. If plaintiff does not consent to the appointment of a guardian ad litem, the Court will set deadlines for briefing and a hearing on the issue of whether plaintiff is incompetent within the meaning of Federal Rule of Civil Procedure 17(c) and whether plaintiffs' interests in this action are adequately protected.

## IV. CONCLUSION

The Court grants in part and denies in part the federal defendants' motion to dismiss the first amended complaint as follows:

1.    Plaintiff's first claim (for violations of Title II and Title III of the ADA) against the federal defendants is dismissed with prejudice.

2.    Plaintiff's second claim (for violation of § 504 of the Rehabilitation Act) against the federal defendants is dismissed with leave to amend.

3.    Plaintiff's third, fourth, and fifth claims (state law tort claims) against the

federal defendants are dismissed with leave to amend, and with leave to substitute the United States as a defendant.

4.    The federal defendants' request to dismiss defendants Does 1-10 is denied without prejudice.

5.    The references in the first amended complaint to "others" are stricken.

Plaintiff has until March 5, 2014, to file a second amended complaint curing the defects described in this order.

The United States' motion to dismiss the tort claims is denied.

By March 5, 2014, plaintiff's counsel must file a statement regarding plaintiff's consent to the appointment of a guardian ad litem as set forth in this order.

IT IS SO ORDERED.

Date: February 6, 2014

Nathanael M. Cousins
United States Magistrate Judge